[Cite as *State v. Tupuola*, 2021-Ohio-2577.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. CT2020-0056 |
| | : | |
| CASSANDRA A. TUPUOLA | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Muskingum County
                                  Court of Common Pleas, Case No,
                                  CR2020-0195

JUDGMENT:                         AFFIRMED

DATE OF JUDGMENT ENTRY:           July 27, 2021

APPEARANCES:

For Plaintiff-Appellee:                       For Defendant-Appellant:

RONALD L. WELCH                               BRAIN W. BENBOW
MUSKINGUM COUNTY PROSECUTOR                   BENBOW LAW OFFICES LLC
                                              265 Sunrise Center Dr.
TAYLOR P. BENNINGTON                          Zanesville, OH 43701
ASSISTANT PROSECUTOR
27 North 5th St., P.O. Box 189
Zanesville, OH 43702-0189

*Delaney, J.*

{¶1} Defendant-Appellant Cassandra A. Tupuola appeals the November 17, 2020 sentencing entry of the Muskingum County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

### Indictment

{¶2} On May 6, 2020, the Muskingum County Grand Jury indicted Defendant-Appellant Cassandra A. Tupuola on the following charges:

1. Attempted Murder, a first-degree felony in violation of R.C. 2923.02(A), with a firearm specification and drive-by specification;

2. Felonious Assault, a second-degree felony in violation of R.C. 2903.11(A)(2), with a firearm specification and drive-by specification;

3. Improper Handling of a Firearm in a Motor Vehicle, a fourth-degree felony in violation of R.C. 2923.16(A);

4. Improper Handling of a Firearm in a Motor Vehicle (Loaded), a fourth-degree felony in violation of R.C. 2923.16(B);

5. Discharging a Firearm at/over a Roadway, a third-degree felony in violation of R.C. 2923.162(A)(3), with a firearm specification;

6. Endangering Children, a first-degree misdemeanor in violation of R.C. 2919.22(A);

7. Endangering Children, a first-degree misdemeanor in violation of R.C. 2919.22(A); and

8. Tampering with Evidence, a third-degree felony in violation of R.C. 2921.12(A)(1), with a firearm specification.

{¶3} Tupuola was arraigned on May 13, 2020 and entered a not guilty plea to all charges.

{¶4} Counsel for Tupuola filed a Suggestion of Incompetence to Stand Trial and requested a mental evaluation. After the evaluation and competency hearing, the trial court found Tupuola competent to stand trial. (Judgment Entry, July 31, 2020). Trial was scheduled for September 17, 2020 but on September 9, 2020, the trial court issued a judgment entry stating a change of plea hearing would be held on September 15, 2020.

### Change of Plea Hearing

{¶5} At the change of plea hearing, Tupuola withdrew her not guilty plea and entered a plea of guilty to three offenses:

1. Attempted Murder, a first-degree felony in violation of R.C. 2923.02(A), with a firearm specification;

6. Endangering Children, a first-degree misdemeanor in violation of R.C. 2919.22(A); and

7. Endangering Children, a first-degree misdemeanor in violation of R.C. 2919.22(A).

The State agreed to nolle Counts 2, 3, 4, 5, 8, and the drive-by specification attached to Count 1 of the indictment. The parties agreed the State would make no recommendation as to the sentencing.

{¶6} The State provided the four-page plea form agreement to the trial court that was signed by Tupuola, her counsel, and the State. (T. 4). In addition to the plea form agreement, there were an additional four pages submitted, which included the notice of a non-life felony indefinite prison term and a notice of violent offender database

provisions. (T. 5). Counsel for Tupuola told the trial court that she had an opportunity to review the plea form with her client, including an explanation of the trial court's application of the Reagan Tokes Act and that Tupuola would be subject to the violent offender registry and "the requirements of that registry including that she would need to register annually for a period of ten years." (T. 6).

{¶7} The trial court next conducted the plea colloquy. The trial court explained the minimum and the maximum indefinite sentence, which Tupuola responded she understood as "The Reagan Tokes." (T. 7). The trial court next stated:

THE COURT: Additionally, because of Count 1, if you plead guilty and are found guilty to Count 1, attempted murder, you're also required to register in the violent offender database. And Miss Kinney's addressed that with you also. Correct?

THE DEFENDANT: Yes, sir.

THE COURT: And you understand that you will be classified a violent offender. There's a hearing determination. You may rebut that. It's gone over – did you go over that with her?

MS. KINNEY: Yes, Your Honor.

THE COURT: And that there's factors considered to rebut it. Additionally, there are – if you fail to register appropriately, there are consequences with regard to failing to register. You understand that?

THE DEFENDANT: Yes.

THE COURT: That could lead to new and additional prison time?

THE DEFENDANT: Yes.

THE COURT: Any questions about that?

THE DEFENDANT: No, sir.

(T. 10-11).

{¶8} The State provided the trial court with a recitation of the facts. (T. 16). On May 3, 2020 at approximately 10:41 pm, the male victim called the police department to report that Tupuola fired a pistol at him and his car while she was driving a green motor vehicle. Two bullet holes were discovered in the victim's car seat, one near the victim's back and one in the headrest. (T. 18). After she shot at him, Tupuola drove away. (T. 17). The police reported to Tupuola's residence and found a green motor vehicle registered in her name parked at her residence. The car had a broken-out front passenger window with glass on the front seat, and a spent shell casing on the front passenger seat. (T. 17).

{¶9} The police took Tupuola into custody. The police determined that Tupuola had her two minor children in the car when she fired the gunshots at the victim in his car. The police inspected Tupuola's cell phone and discovered a video of her following the victim in her car. "She was in her vehicle. You can hear her children in the back of the vehicle. You can hear a loud bang like a gunshot being fired, and her children actually have a discussion with her about that loud bang at one point saying I think my ear's broken out." (T. 17).

{¶10} At the time of the shooting, Tupuola and the victim were in a relationship, but the victim took his belongings and left. Tupuola was upset and followed him around the streets as he was driving to get away from her before she shot at him. (T. 18).

{¶11} The trial court accepted Tupuola's plea, found her guilty of the charges, and the set the matter for sentencing hearing after a presentence investigation.

**Sentencing Hearing**

{¶12} The matter came on for sentencing hearing on November 9, 2020. The trial court first conducted the violent offender portion of the hearing:

THE COURT: * * * Ms. Tupuola, you understand that being found guilty, having pled guilty and being found guilty of attempted murder, that you have a duty to enroll as a violent offender –

THE DEFENDANT: Yes.

THE COURT: -- in the State of Ohio?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And I – I am certain Ms. Kinney went through that with you, but did she?

THE DEFENDANT: Yes.

THE COURT: And do you understand the – the duties associated with the necessity to enroll for 10 years?

THE DEFENDANT: Yes, sir.

THE COURT: And do you have any questions about that?

THE DEFENDANT: No.

THE COURT: You have to enroll every – after your initial enrollment you have to enroll annually. You must update and amend any information within 10 days. Understand that?

THE DEFENDANT: Yes.

THE COURT: You understand if you don't follow all of these rules and requirements, that could lead to new and additional jail or prison time not even associated with this case?

THE DEFENDANT: Yes.

THE COURT: Any questions about any of that?

THE DEFENDANT: No, sir.

(T. 6-7).

{¶13} Via sentencing entry filed November 17, 2020, the trial court sentenced Tupuola to the following: Count One -- a stated minimum prison term of seven years, an indefinite prison term of 10.5 years, and a mandatory three-year prison term on the firearm specification; Count Six -- six-months local incarceration; and Count Seven -- six-months local incarceration. The sentencing entry further stated: "Provided however, the periods of incarceration imposed herein shall be served concurrently with one another. The mandatory prison term for the gun specification shall be served prior to the stated minimum prison term of seven (7) years for an aggregate minimum prison term of ten (10) years and an aggregate indefinite maximum prison term of thirteen and one-half (13½) years."

{¶14} It is from this sentencing entry that Tupuola now appeals.

**ASSIGNMENTS OF ERROR**

{¶15} Tupuola raises four Assignments of Error:

{¶16} "I. AS AMENDED BY THE REAGAN TOKES ACT, THE REVISED CODE'S SENTENCES FOR THE FIRST AND SECOND DEGREE QUALIFYING FELONIES VIOLATES THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF

OHIO. APPELLANT'S SENTENCE IS CONTRARY TO LAW BECAUSE SHE WAS SENTENCED PURSUANT TO THE UNCONSTITUTIONAL REAGAN TOKES ACT. THIS ACT VIOLATES THE SEPARATION OF POWERS DOCTRINE, AS IT PLACES THE DECISION TO EXTEND A PRISON TERM UPON THE STATE – NOT THE TRIAL COURT. IT FURTHER VIOLATES DUE PROCESS IN THAT THE DECISION TO RESTRICT AN INDIVIDUAL'S FREEDOM IS MADE BY A JUDGE IN VIOLATION OF HER RIGHT TO A JURY TRIAL TO DECIDE WHETHER HER MINIMUM SENTENCE SHOULD BE INCREASED.

{¶17} "II. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

{¶18} "III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY NOT PERSONALLY ADDRESSING APPELLANT TO NOTIFY HER BEFORE SENTENCING OF THE PRESUMPTION OF THE DUTY TO ENROLL IN THE VIOLENT OFFENDER DATABASE, APPELLANT'S RIGHT TO FILE A MOTION TO REBUT THE PRESUMPTION, THE PROCEDURE AND CRITERIA FOR REBUTTING THE PRESUMPTION, AND THE EFFECT OF A REBUTTAL AND THE POST-REBUTTAL HEARING PROCEDURES AND POSSIBLE OUTCOMES.

{¶19} "IV. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY SENTENCING APPELLANT TO A DISPROPORTIONATE SENTENCE."

## ANALYSIS

### I. Reagan Tokes Law and Ineffective Assistance of Counsel

{¶20} Senate Bill 201, known as the Reagan Tokes Law, became effective on March 22, 2019. Under the Reagan Tokes Law, qualifying first- and second-degree offenses committed on or after March 22, 2019 are subject to the imposition of an indefinite prison term. The law states the prison terms will consist of a minimum term selected by the sentencing judge from a range of terms described in R.C. 2929.14(A) and a maximum term determined by formulas described in R.C. 2929.144.

{¶21} The Reagan Tokes Law establishes a presumptive release date at the end of the minimum prison term. R.C. 2967.271(B). The Ohio Department of Rehabilitation and Correction may rebut that presumption, however, and keep the offender in prison for an additional period not to exceed the maximum term imposed by the sentencing judge. R.C. 2967.271(C). To rebut the presumption, the ODRC must hold a hearing and determine whether one or more of the factors set forth in R.C. 2967.271(C)(1), (2), and (3) apply.

{¶22} In her first Assignment of Error, Tupuola contends the indefinite sentencing scheme established by the Reagan Tokes Law, as applied in this case to Count One, is unconstitutional because it violates the constitutional guarantee of the right to a jury trial and the separation of powers doctrine. We decline to consider this Assignment of Error for two reasons. First, we find the issue is not ripe for our review. Second, Tupuola forfeited her appeal of the issue because she did not raise any constitutional challenge to the Reagan Tokes Law in the trial court.

*Not Ripe for Review*

{¶23} This Court has previously addressed whether a challenge to the constitutionality of the Reagan Tokes Law is ripe for appellate review where the defendant has yet to serve the minimum term and yet to be subjected to the application of the Reagan Tokes Law. This Court has repeatedly held the issue is not ripe for review. *See State v. Clark*, 5th Dist. Licking No. 2020 CA 00017, 2020-Ohio-5013; *State v. Downard*, 5th Dist. Muskingum No. CT2019-0079, 2020-Ohio-4227; *State v. Manion*, 5th Dist. Tuscarawas No. 2020 AP 03 0009, 2020-Ohio-4230; *State v. Kibler*, 5th Dist. Muskingum No. CT2020-0026, 2020-Ohio-4631, *State v. Wolfe*, 5th Dist. Licking No. 2020-CA-0021, 2020-Ohio-5501; *State v. Buckner*, 5th Dist. Muskingum CT2020-0023, 2020-0024, 2020-Ohio-7017; and *State v, King*, 5th Dist. Stark No. 2020 CA 00064, 2021-Ohio-1636..

{¶24} The Sixth District has reached the same conclusion in *State v. Maddox*, 6th Dist. Lucas No. CL-19-1253, 2020-Ohio-4702, and *State v. Velliquette*, 6th Dist. Lucas No. L-19-1232, 2020-Ohio-4855. Likewise, the Fourth District found the issue not ripe for review in *State v. Ramey*, 4th Dist. Washington Nos. CA 1 and 20 CA 2, 2020-Ohio-6733.

{¶25} We note the Ohio Supreme Court has accepted a certified conflict on the issue of whether the constitutionally of the Reagan Tokes Law is ripe for review on direct appeal or only after the defendant has served the minimum term and been subject to extension by application of the law. *See, State v. Maddox*, 6th Dist. Lucas No. L-19-1253, 2020-Ohio-4702, order to certify conflict allowed, *State v. Maddox*, 160 Ohio St.3d 1505, 2020-Ohio-6913, 159 N.E.3d 1150 (Table). *See also*, *State v. Downard*, 5th Dist. Muskingum No. CT2019-0079, 2020-Ohio-4227, appeal accepted on Appellant's Proposition of Law No. II, *State v. Downard*, 160 Ohio St.3d 1507, 2020-Ohio-6835, 159

N.E.3d 1507 (Table) (Sua sponte, cause held for the decision in 2020-1266, *State v. Maddox*).

{¶26} For the reasons set forth in this Court's prior opinions, we find Tupuola's Reagan Tokes challenge is not ripe for review.

*Failure to Raise the Argument*

{¶27} The record in this case shows that Tupuola did not raise a constitutional challenge to the Reagan Tokes Law at the trial court level. The Ohio Supreme Court has held: "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." *Canton v. Schuster*, 5th Dist. Stark No. 2019 CA 00115, 2020-Ohio-3060, 2020 WL 2616035, ¶ 29 quoting *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus. The Ohio Supreme Court explained that "the question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court." *Id*. By not raising the constitutionality of the Reagan Tokes Law in the trial court, Tupuola waived her constitutional challenges to the law, and we will not consider them for the first time on appeal.

{¶28} The Ohio Supreme Court subsequently clarified *Awan*, holding a court has the right to consider constitutional challenges in its discretion even if the argument was waived "in specific cases of plain error or where the rights and interests involved may warrant it." *Id*. citing *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus. We decline to exercise that discretion in this case based on our holding that a constitutional challenge to the Reagan Tokes Law is not ripe for our review.

{¶29} Tupuola's first Assignment of Error is overruled.

*Ineffective Assistance of Counsel*

{¶30} For ease of discussion, we address Tupuola's second Assignment of Error that she received the ineffective assistance of counsel in relation to the Reagan Tokes Law. Tupuola contends her trial counsel was ineffective for her failure to raise a constitutional challenge to the Reagan Tokes Law before the trial court.

{¶31} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶32} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶33} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

{¶34} For the reasons stated in *State v. Downard*, 5th Dist. Muskingum No. CT2019-0079, 2020-Ohio-4227, *appeal allowed,* 160 Ohio St.3d 1507, 2020-Ohio-6835, 159 N.E.3d 1152, Tupuola's claim in her second Assignment of Error for ineffective assistance of counsel as to the Reagan Tokes Law is overruled. *State v. Hunter*, 5th Dist. Muskingum No. CT2020-0042, 2021-Ohio-1424, ¶ 5; *State v. Mills*, 5th Dist. Coshocton No. 2020 CA 10, 2021-Ohio-1180, ¶ 14.

### III. Violent Offender Database and Ineffective Assistance of Counsel

{¶35} In her third Assignment of Error, Tupuola contends the trial court did not properly advise her at the plea hearing of the procedures related to enrollment in the Violent Offender Database ("VOD"). Also, Tupuola raises the issue of ineffective assistance of counsel as to her enrollment in the VOD in her second Assignment of Error. We consider her second and third Assignments of Error together as they both relate to the Violent Offender Database.

*Sierah's Law*

{¶36} R.C. 2903.41 et seq., commonly known as Sierah's Law, went into effect on March 20, 2019. *See* 2018 S.B. No. 231. Sierah's Law created the Violent Offender's Database and requires violent offenders convicted of specified offenses, including attempted murder, to enroll in the database. Sierah's Law creates a presumption that violent offenders enroll in the database and provides enrollment for a minimum of ten years. Re-enrollment in the database is required on an annual basis.

{¶37} R.C. 2903.42(A)(1) governs enrollment in the VOD. It states as follows:

(A)(1) For each person who is classified a violent offender, it is presumed

that the violent offender shall be required to enroll in the violent offender

database with respect to the offense that so classifies the person and shall have all violent offender database duties with respect to that offense for ten years after the offender initially enrolls in the database. The presumption is a rebuttable presumption that the violent offender may rebut as provided in division (A)(4) of this section, after filing a motion in accordance with division (A)(2)(a) or (b) of this section, whichever is applicable. Each violent offender shall be informed of the presumption established under this division, of the offender's right to file a motion to rebut the presumption, of the procedure and criteria for rebutting the presumption, and of the effect of a rebuttal and the post-rebuttal hearing procedures and possible outcome, as follows:

(a) If the person is classified a violent offender under division (A)(1) of section 2903.41 of the Revised Code, the court that is sentencing the offender for the offense that so classifies the person shall inform the offender before sentencing of the presumption, the right, and the procedure, criteria, and possible outcome.

R.C. 2903.42.

{¶38} As stated above, the presumption that a person classified as a violent offender must enroll in the VOD is rebuttable. R.C. 2903.42(A)(1). To rebut the presumption, the defendant is required to file a motion with the trial court, prior to or at sentencing, asserting that they are not the principal offender in the commission of the offense and request that the court not require them to enroll in the VOD and not have all VOD duties with respect to that offense. R.C. 2903.42(A)(2)(a). The defendant bears the

burden to establish by a preponderance of the evidence that they are not the principal offender. R.C. 2903.42(A)(4).

{¶39} Tupuola contends the trial court failed to comply with the notification requirements of R.C. 2903.42(A)(1)(a). In *State v. Hall*, 2021-Ohio-1894, -- N.E.3d – (2nd Dist.), the Second District Court of Appeals addressed a similar argument. The appellant in *Hall* took the position that his guilty pleas were not made in a knowing, intelligent, and voluntary manner because the trial court did not properly advise him at the plea hearing of his duties to enroll in the VOD or the procedures to overcome the presumption of violent offender registration prior to sentencing. *Id*. at ¶ 25. In making its determination, the appellate court recited the exchange between the trial court and the defendant at the plea hearing:

> TRIAL COURT: All right. I'm going to have you listen as the prosecution reads a statement of the charges. But before they do, is the State satisfied with the explanation so far?
>
> THE STATE: Yes, Your Honor. However, I would note that by virtue of pleading to Count IV, the kidnapping charge, Mr. Hall would have to register as a violent offender.
>
> TRIAL COURT: Yeah. I – I should've explain [sic] this to you, sir, and I'm sure [Defense Counsel] went over this with you. But by virtue of the statute because of the – is this for the kidnapping, too, or just the aggravated robbery?
>
> THE STATE: Just kidnapping.

TRIAL COURT: Okay. On the kidnapping offense, the Court will have to designate you as a violent offender. You'll have the duty to register as that and I will explain all of that to you at the time of sentencing but you would be required to register as a violent offender. Do you understand that?

HALL: I do.

TRIAL COURT: Okay. Does that change anything so far up to this point in time?

HALL: No.

TRIAL COURT: Okay. Anything else that needs to be explained?

THE STATE: Yes, Your Honor. Your Honor, with regards to that violent offender requirement, it's just a notification to the Defendant that if he does need to challenge and rebut the presumption of it, then any kind of motion should have to be filed prior to sentencing.

TRIAL COURT: Okay. [Defense Counsel], you can explain to him if he wants to rebut that, at all, a motion has to be filed before sentencing on the violent offender, if that is happening.

DEFENSE COUNSEL: I understand that.

TRIAL COURT: Anything further?

THE STATE: No, Your Honor.

TRIAL COURT: [Defense Counsel], are you satisfied with everything the Court's gone over so far?

DEFENSE COUNSEL: Yes.

*Id.* at ¶ 30.

{¶40} The appellant in *Hall* relied upon the Ohio Supreme Court's opinion in *State v. Dangler*, 162 St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, to argue the trial court's explanation was inadequate. In *Dangler*, the Supreme Court held the trial court's failure to separately go over the sex offender registration and in-person verification requirements, community notification provisions, and residence restrictions imposed by the sex offender registration scheme when accepting the defendant's no contest plea did not constitute a complete failure to comply with the criminal procedure rule governing pleas of guilty and no contest in felony cases. *Id.* at ¶ 31 citing *Dangler* at syllabus. The trial court was only required to substantially comply during the Crim.R. 11 colloquy because while the sex offender duties were punitive in nature and part of the maximum penalty imposed, the Court found the duty to enroll in the registry was a non-constitutional aspect of the defendant's plea and therefore the defendant was required to establish that he was prejudiced. *Id.*

{¶41} The Second District found the appellant's reliance upon *Dangler* was misplaced because the Twelfth District Court of Appeals held the requirement to register with the VOD is remedial in nature, not punitive. *Id.* at ¶ 32 citing *State v. Hubbard*, 2020-Ohio-856, 146 N.E.3d 593, ¶ 32 (12th Dist.):

> "[C]lassification as a violent offender and enrollment into the violent offender database "is a collateral consequence of the offender's criminal acts rather than a form of punishment per se." *Id.*, citing *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, at ¶ 34.
>
> > "To argue the trial court has to inform defendant-appellant of all of the possible consequences of his plea is untenable. For

example, the trial court does not have to inform defendant-appellant of all the 'effects' of his plea such as the potential for losing his/her job, home, marriage, reputation or that his/her plea to a felony will deprive him/her the right to vote and/or possess a firearm."

*State v. Craver*, 2d Dist. Montgomery No. 25804, 2014-Ohio-3635, 2014 WL 4176073, ¶ 14, citing *State v. Rice*, 8th Dist. Cuyahoga No. 72685, 1999 WL 125742, *4 (Feb. 18, 1999).

*State v. Hall*, 2nd Dist. Montgomery No. 28882, 2021-Ohio-1894, 2021 WL 2285305, ¶ 32.

{¶42} The Second District concluded that because the VOD was a non-constitutional aspect of the appellant's guilty plea and a collateral consequence of his actions, the trial court was not required to inform the appellant of all his duties about registering as a violent offender. *Id.* at ¶ 33. The court further held that on the record before it, the trial court substantially complied with Crim.R. 11 regarding informing the appellant of his duty to register with the VOD:

Specifically, [the appellant] signed the plea form for the kidnapping charge which indicated that by pleading guilty to that count, he would have to register as a violent offender. Additionally, the trial court advised [the appellant] that he would have a duty to register with the VOD, and at the time of sentencing, it would review all of the duties with him with respect to registration. Significantly, the trial court and the State put [the appellant] on notice at the plea hearing that if he wanted to rebut the presumption of

having to register with the VOD, he would have to file a motion prior to sentencing. As stated above, the trial court advised defense counsel to discuss the VOD registration with [the appellant], and defense counsel stated that he understood. The record establishes that neither [the appellant] nor his counsel filed a motion prior to sentencing in order to rebut the presumption of having to register as a violent offender. Finally, at sentencing, [the appellant] was advised of all his duties to register as a violent offender, and he signed a Notice of Duties to Enroll as a Violent Offender (O.R.C. 2903.41 et seq.).

*Id.* at ¶ 33.

{¶43} The facts of this case are comparable to those in *State v. Hall* where the Second District found the trial court substantially complied with Crim.R. 11 to advise the appellant of his duties to register as a violent offender. While Tupuola has not argued in her appeal that the trial court violated Crim.R. 11, the facts of this case are in alignment with *Hall* to find that trial court made no error when it advised Tupuola of her duties pursuant to the VOD. First, Tupuola signed a plea agreement form, which indicated that she was a mandatory registrant as a violent offender. Tupuola acknowledged she received "Notice of Violent Offender Database Provisions." The "Notice of Violent Offender Database Provisions" provided to Tupuola stated in pertinent part:

You have been convicted of or pleaded guilty to an offense under Ohio law that triggers provisions related to a database for "violent offenders." * * * You are hereby informed of the following matters.

**Classification as Violent Offender**. Because you have been convicted or pleaded guilty to one or more such offenses, you are classified as a violent offender under Ohio law.

**Presumption of Ten-Year Duty**. It is presumed that you shall be required to enroll in the violent offender database with respect to the offense(s) that classify you as a violent offender and shall have all violent offender database duties with respect to such offense(s) for ten years after you initially enroll in the database.

**Filing Motion to Rebut Presumption**. The presumption is rebuttable. If you wish to rebut the presumption, you must file a motion to rebut with the court and serve a copy on the prosecutor. The motion shall assert you were not the principal offender * * * and shall request that the court not require you to enroll in the violent offender database * * *. * * * If no motion to rebut is filed, you shall be required to enroll in the violent offender database with respect to the offense(s) that classify you as violent offender and shall have all VOD duties with respect to that offense for ten years after you initially enroll in the database.

**Hearing and Determination**. If you file a motion to rebut, you will have the burden of proving to the court, by a preponderance of the evidence, that you were not the principal offender in the commission of any of the offense(s) that classify you as a violent offender. * * *

**Factors Considered**. Even if the presumption is rebutted and the court finds you were not the principal offender, the court will still make a

determination whether you should have VOD duties. In making that determination, the court shall consider all of the following factors: (i) whether you have any convictions for any offense of violence, prior to the offense(s) that classify you as a violent offender, and whether those prior convictions, if any, indicate you have a propensity for violence; (ii) the results of a risk assessment of you * * *; (iii) the degree of your culpability or involvement in the offense at issue * * *; (iv) the public interest and safety.

(Notice of Violent-Offender Database Provisions, Sept. 15, 2020).

{¶44} Second, at the change of plea hearing, the trial court advised Tupuola during the plea colloquy that if it found her guilty of attempted murder, she would be required to register in the VOD and explained the procedures therein. The trial court confirmed with Tupuola that her trial counsel had reviewed with her the procedures and requirements of the VOD. Third, at the sentencing hearing, the trial court again confirmed that Tupuola was aware of her duty to enroll in the VOD and the elements thereof. Tupuola affirmed that her trial counsel had reviewed with her the requirements of the violent offender database. Tupuola was advised of her duties as to the VOD both in written and verbal format, at the change of plea hearing and sentencing hearing. We find the trial court complied with the notification requirements of the VOD.

{¶45} In *Hall*, the Second District finally noted that assuming arguendo the trial court did not comply with Crim.R. 11 when it failed to advise the appellant of *all* the duties associated with the VOD, it found the appellant could not establish he was prejudiced and would not have otherwise pleaded guilty. (Emphasis sic.) *State v. Hall*, 2021-Ohio-1894, ¶ 34. The only method for the appellant to rebut the presumption of having to register as

a violent offender was to file a motion with the trial court arguing that he was not the principal offender. *Id.* The court stated the appellant could not advance that argument because the record clearly showed that he was the sole perpetrator of the offenses, thereby making it "nigh impossible" for him to rebut the presumption that he was not the principal offender. *Id.*

{¶46} In the present case, we find it is likewise "nigh impossible" for Tupuola to rebut the presumption that she was not the principal offender of the offense of attempted murder. Upon her change of plea, the State entered the recitation of the facts into the record. The facts show that Tupuola fired multiple gunshots into the victim's car while he was in the car, striking his seat and headrest. Tupuola was the sole perpetrator of the offense of attempted murder committed on May 3, 2020.

{¶47} Tupuola's third Assignment of Error is overruled.

*Ineffective Assistance of Counsel*

{¶48} This analysis leads to Tupuola's argument in her second Assignment of Error where she contends her trial counsel erred when it failed to file a motion to rebut the presumption that she was not the principal offender. Based on our analysis above and consideration of the *Strickland* factors, we find that Tupuola received competent representation and the proceeding would have been no different if the motion had been filed. Tupuola's second Assignment of Error is overruled as to the VOD.

**IV. Ineffective Assistance of Counsel and Change of Plea**

{¶49} In her second Assignment of Error, Tupuola contends she received the ineffective assistance of counsel when she was advised to plead guilty to the charge of attempted murder. We disagree.

{¶50} We earlier reviewed the *Strickland* factors to determine if there was ineffective assistance of counsel. As explained by our colleagues from the Eighth District in *State v. Williams*, 8th Dist. Cuyahoga No. 100459, 2014-Ohio-3415, ¶ 11:

> A defendant who pleads guilty waives all appealable issues, including the right to assert an ineffective assistance of counsel claim, except the defendant may claim ineffective assistance of counsel on the basis that the counsel's deficient performance caused the plea to be less than knowing, intelligent, and voluntary. In such cases, a defendant can prevail only by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial. (Citations omitted.)

*State v. Miller*, 5th Dist. Stark No. 2019CA00046, 2019-Ohio-4275, 2019 WL 5268633, ¶ 13

{¶51} Tupuola contends her trial counsel was ineffective for advising her to plead guilty to attempted murder because the events on May 3, 2020 did not meet the elements of attempted murder. She specifically argues that her actions did not meet the element of "purposefully" as statutorily defined. R.C. 2923.02(A) states, "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2903.02(A) provides, "No person shall purposely cause the death of another * * *." A person acts purposely when he or she specifically intends to cause a particular result. R.C. 2901.22(A). Tupuola contends there was no evidence presented that she specifically intended to kill the victim when she shot at him from her moving

vehicle into his moving vehicle, striking his seat and headrest. Even if the victim was hit by one of the bullets, Tupuola argues, there was no evidence that he would have died.

{¶52} We have insufficient facts in the record before us to evaluate the merits of Tupuola's underlying premise. Tupuola did not move to withdraw her guilty plea under Crim.R. 32.1. The facts presented by the State at the change of plea hearing stated Tupuola followed the victim in her car, she purposefully fired a gun into the car, the bullets fired by Tupuola struck the seat in which the victim was sitting, and Tupuola fled the scene. Based on the events on May 3, 2020, Tupuola was originally indicted on eight charges and the plea agreement reduced the charges to three counts: attempted murder and two counts of child endangering. She cannot establish her trial counsel was deficient.

{¶53} Tupuola's second Assignment of Error arguing her trial counsel was inefficient in relation to her guilty plea is overruled.

### V. Sentencing

{¶54} In her final Assignment of Error, Tupuola argues her sentence was disproportionate to the sentencing factors. We disagree.

{¶55} We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22; *State v. Howell*, 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶ 31. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law.

{¶56} Nothing in R.C. 2953.08(G)(2) permits this court to independently weigh the evidence in the record and substitute its own judgment for that of the trial court to determine a sentence that best reflects compliance with R.C. 2929.11 and R.C. 2929.12. *State v. Jones*, 169 N.E.3d 649, 2020-Ohio-6729, ¶ 42.

{¶57} This Court is, therefore, without authority to disturb Tupuola's sentence absent a finding by clear and convincing evidence that the record does not support the trial court's findings under R.C. 2929.11 and R.C. 2929.12. Instead, we may only determine if the sentence is contrary to law.

{¶58} A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes post release control, and sentences the defendant within the permissible statutory range." *State v. Pettorini*, 5th Dist. Licking No. 2020 CA 00057, 2021-Ohio-1512, 2021 WL 1714216, ¶¶ 14-16 quoting *State v. Dinka*, 12th Dist. Warren Nos. CA2019-03-022 & CA2019-03-026, 2019-Ohio-4209, ¶ 36.

{¶59} Tupuola does not argue her sentence is not within the permissible statutory range. Rather, Tupuola argues the trial court did not consider the history of domestic violence suffered by Tupuola during her relationship with the victim. The trial court ordered a presentence investigation report, which showed Tupuola had a criminal history including a conviction for having a firearm in a motor vehicle after a reported attempt to run over a man with her car and aggravated menacing involving a knife. While she was in jail pending trial, Tupuola had her privileges taken away due to her behavior.

{¶60} Based on the foregoing, we find the trial court did not err in sentencing Tupuola to a stated minimum prison term of seven (7) years for an aggregate minimum

prison term of ten (10) years and an aggregate indefinite maximum prison term of thirteen and one-half (13½) years.

{¶61} Tupuola's fourth Assignment of Error is overruled.

## CONCLUSION

{¶62} The judgment of the Muskingum County Court of Common Pleas is affirmed.

By: Delaney, J.,

Baldwin, P.J. and

Hoffman, J., concur.